# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FEDERAL ELECTION COMMISSION,**<br><br>**Defendant.** | **Civil Action No.  04-2145 (JDB)** |

## MEMORANDUM OPINION

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed this action under the Federal Election Campaigns Act ("FECA"), 2 U.S.C. § 431 et seq.  CREW seeks judicial review, as a party "aggrieved" under 2 U.S.C. § 437(g)(a)(8)(A), of defendant Federal Election Commission's ("FEC") decision to dismiss CREW's administrative complaint.  Presently before the Court is the FEC's motion for summary judgment.  For the reasons discussed below, the Court will grant the FEC's motion.

## BACKGROUND

CREW is a non-partisan, non-profit watchdog entity organized under 26 U.S.C. § 501(c)(3) of the Internal Revenue Code.  Sloan Decl. at ¶ 2; Def.'s Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Statement") at 1 ¶ 2.  CREW is not comprised of members who are eligible to vote, does not participate in political campaigns, does not contribute to political campaigns, and is legally foreclosed from doing so because of its status as a § 501(c)(3) entity.  Def.'s Statement at 1 ¶ 2.  CREW describes its core mission as protecting the

1

citizenry's right to be informed of the activities of government officials and "ensuring the integrity of government officials."  Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Mem. Opp'n") at 5; see also Sloan Decl. at ¶ 2.  To achieve this goal, CREW utilizes a number of tools designed to "empower citizens to have an influential voice in government decisions and in the government decision-making process," the most significant of which is the "dissemination of information" to the voting public.  Pl.'s Mem. Opp'n at 5; see also Sloan Decl. at ¶ 2.

As part of its mission, CREW seeks "to expose unethical and illegal conduct of government officials" and files complaints with the FEC against alleged violators of federal campaign finance laws.  Pl.'s Mem. Opp'n at 5; Sloan Decl. at ¶ 3.  On February 4, 2004, CREW filed such a complaint against President George W. Bush's 2004 presidential campaign ("Bush-Cheney '04") as well as the campaign's manager and treasurer, Kenneth Mehlman and David Herndon, respectively.  See Def.'s Exh. A at 1-2; Def.'s Statement at ¶ 6.  The complaint also named Americans for Tax Reform ("ATR") and the organization's president, Grover Norquist.  Def.'s Exh. A; see also Def.'s Statement at ¶ 6; Sloan Decl. at ¶ 4.  Specifically, CREW alleged that a master contact list, containing the names and contact information of conservative activists, had been provided by Norquist to Mehlman, who then passed it on to Bush-Cheney '04.  Def.'s Exh. A at 1-2.  CREW asserted that this master contact list constituted an in-kind contribution under FECA.  Id. at 2.  The complaint was entirely based on a Washington Post article that was written by a journalist who had witnessed the exchange.  See Laura Blumenfeld, Sowing the Seeds of GOP Domination: Conservative Norquist Cultivates Grass Roots Beyond the Beltway, WASH. POST, Jan. 12, 2004, at A01 ("Def.'s Exh. B").

CREW challenged the legality of the in-kind contribution on several fronts:  (1) if the list

was actually provided by ATR, with Norquist only acting as a messenger, then it constituted an

illegal corporate contribution under 2 U.S.C. § 441b(a); (2) if, on the other hand, Norquist

contributed the list personally, then it constituted an excessive contribution by an individual

under 2 U.S.C. § 441a(a)(1)(A); and (3) regardless of the identity of the actual contributor, Bush-

Cheney '04, Mehlman, and Herndon violated FECA by not reporting the in-kind contribution as

required by 2 U.S.C. § 434 (a)-(b).  Def.'s Exh. A at 2.  After an investigation, the FEC agreed

that the contact list constituted an in-kind contribution under FECA, id., and ultimately found

reason to believe that Bush-Cheney '04, Mehlman, Herndon, and ATR violated § 441b(a), id. at

10, and that Bush-Cheney '04 and Herndon violated § 434(b), id. at 11.  However, the FEC

utilized its prosecutorial discretion to close the investigation and dismiss CREW's complaint

because the value of the list "appear[ed] to be limited in size and impact."  Id. at 3-4.  Because

the individuals named on the list were already active supporters of conservative causes, the FEC

surmised that they were probably already aware of and involved in Bush-Cheney '04's efforts.  Id.

at 10-11.  Furthermore, the FEC found that Bush-Cheney '04 probably already possessed some of

the materials, and that if any of the materials were available through public media -- like ATR's

website -- then the already negligible value of the list would be further reduced.  Id.

On December 13, 2004, CREW filed a judicial complaint with the Court under FECA,

arguing that it is a party "aggrieved" under 2 U.S.C. § 437(g)(a)(8)(A) and challenging the FEC's

decision not to pursue further investigation.  Compl. at 4 ¶ 11.  The FEC filed a motion for

summary judgment on April 15, 2005, arguing that CREW lacks standing to pursue this action in

an Article III court.  Def.'s Mem. Supp. at 3.  CREW wants the FEC to require the administrative

defendants to assign a monetary value to the list, and to disclose publicly that dollar figure,

because CREW claims that without this information, it is unable to accomplish its core mission of public education and voter empowerment through the dissemination of information.  Pl.'s Mem. Opp'n at 15-17, 21; see also Sloan Decl. at ¶ 5-8.  CREW submits that FECA confers a statutory entitlement to the value of the list because, under FEC v. Akins, 524 U.S. 11 (1998), and Kean for Congress Committee v. FEC, Civil Action No. 04-0007 (D.D.C. Jan. 25, 2005) (memorandum opinion) ("Kean Mem. Op."), this information is helpful for voting purposes.  See Pl.'s Mem. Opp'n at 18; see also id. at 24-25.  The deprivation of knowledge as to the precise value of the list, CREW claims, has prevented CREW from "receiv[ing] all that it is due from the administrative process." Id. at 23.  CREW asserts that this, in turn, constitutes an injury in fact that is sufficient to support informational standing, and that its resources have been drained as a result of its efforts to obtain the value of the list.  Id. at 16; see also Sloan Decl. at ¶ 9.

The FEC, in contrast, believes that CREW seeks only the enforcement of the law, Def.'s Mem. Supp. at 16, and that CREW has not suffered any injury in fact, id. at 12-15.  Rather, the FEC characterizes any alleged harm as "abstract," Def.'s Reply at 1; "generalized," id. at 3, and "speculati[ve]," id. at 4.  According to the FEC, CREW has fallen well short of establishing that it has suffered the requisite programmatic harm to invoke the informational standing doctrine under Common Cause v. FEC, 108 F.3d 413 (D.C. Cir. 1997), because CREW has identified no specific use to which it would put the sought-after information.  Def.'s Mem. Supp. at 13-14; Def.'s Reply at 7, 10-12.  Instead, the FEC claims that CREW has only identified generic interests in public education and voter empowerment, both of which boil down to a broad interest in having the law enforced and "get[ting] the bad guys."  Def.'s Reply at 13 (citing Common Cause, 108 F.3d at 418); see also Def.'s Mem. Supp. at 22-23.  The FEC argues that CREW

really seeks validation of its own estimated value of the list:  because CREW thinks the value of the list is significant, rather than de minimus, it seeks to have the FEC pursue the investigation further.  See Def.'s Mem. Supp. at 23.

The FEC further argues that the dollar value of the list is not useful for voting purposes because CREW cannot vote, it has no members who can vote, the 2004 presidential election is complete, President Bush is constitutionally foreclosed from seeking another term, and Vice President Cheney has repeatedly confirmed that he will not run for president.  Def.'s Mem. Supp. at 18-21.  Any information that is useful in voting, the FEC submits, is already available to CREW -- namely:  (1) the knowledge that the FEC found reasonable cause to believe FECA was violated; (2) the knowledge of which FECA provisions were violated; (3) the knowledge of the nature of the illegal contribution; (4) the knowledge that both the FEC and the administrative defendants assessed the list's value as de minimus; and (5) the identity of the organizations and individuals involved.  Def.'s Mem. Supp. at 23-24; see also Def.'s Mem. Supp. at 18.  Thus, the FEC argues that the specific value of the list is not pertinent to voter education or voter choice, and also notes that the list does not lend itself to precise valuation.  Def.'s Reply at 4, 8-9.

## **LEGAL STANDARD**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating that no genuine dispute of material fact exists.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)).

To determine whether there is a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-moving party's statements as true, and accept all evidence and make all inferences in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Nevertheless, a non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its position, id. at 252, although the moving party need only point to the absence of evidence proffered by the non-moving party, Celotex, 477 U.S. at 322.  Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

A motion for summary judgment based on lack of subject matter jurisdiction should not be granted "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief."  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); Kean Mem. Op. at 8-9.  Although the plaintiff is given the benefit of all favorable inferences that may be drawn from the facts alleged, the Court "'has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority,' and [the] plaintiff bears the burden of pleading a claim within the Court's subject matter jurisdiction."  Kean Mem. Op. at 9 (citing Grand Lodge of Fraternal Order of Police, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 18 (D.D.C. 1998)).  "If the evidence is merely colorable, or is not significantly probative, [then] summary judgment may be granted."

Anderson, 477 U.S. at 249-50 (internal citations omitted).

## ANALYSIS

Under Article III of the Constitution, the federal courts only have jurisdiction to hear "[c]ases" and "[c]ontroversies."  U.S. Const., art. III, § 2; Flast v. Cohen, 392 U.S. 83, 94 (1968). One component of this "case or controversy" requirement is that in order to bring a lawsuit in federal court, a plaintiff must have standing to sue.  See Kean Mem. Op. at 10.  The standing inquiry examines whether the particular plaintiff before the Court is the proper party to legally challenge the defendant's conduct.  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990); Kean Mem. Op. at 10.  The federal courts are constitutionally mandated to refrain from rendering advisory opinions; thus, federal courts must, as a threshold matter, examine their own jurisdiction.  See, e.g., Coleman v. Miller, 307 U.S. 433, 460 (1939) (Frankfurter, J., dissenting).

Simply put, "'the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'"  Kean Mem. Op. at 10 (quoting Allen v. Wright, 468 U.S. 737, 750-751 (1984)).  There are three elements to the standing inquiry, which "together constitute the 'irreducible constitutional minimum' . . . [that] is an 'essential and unchanging part'" of the case or controversy requirement under Article III, Kean Mem. Op. at 11 (quoting Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000)):

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of -- the injury must be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely

> speculative, that the injury will be redressed by a favorable
> decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted).

The injury in fact component of the standing inquiry is often difficult for organizational plaintiffs like CREW to satisfy.  To vindicate its own rights or entitlements, as opposed to those of its members, an organizational plaintiff must establish that its "discrete programmatic concerns are being directly and adversely affected by the challenged action."  Common Cause, 108 F.3d at 417 (citing Nat'l Taxpayers Union, Inc v. United States, 68 F.3d 1428, 1433 (D.C. Cir. 1995)).  This standard may only be satisfied by a showing that CREW has suffered a "concrete and demonstrable injury" to its organizational activities, in conjunction with a depletion of resources, that constitutes more than a simple inconvenience to "abstract social interests."  Id. (citing Nat'l Taxpayers Union, 68 F.3d at 1433).

Congress may, by statute, create certain rights and entitlements.  Akins v. FEC,101 F.3d 731, 736 (D.C. Cir. 1996) (en banc), aff'd in relevant part and vacated in part on other grounds, 524 U.S. 11 (1998).  If a party is deprived of such a statutory right or entitlement, then it has suffered an injury in fact under Article III.  See Kean Mem. Op. at 17 (citing Warth v. Seldin, 422 U.S. 499, 514 (1975)).  In this way, a party that has been deprived of information to which it is statutorily entitled may have "informational standing."  Common Cause, 108 F.3d at 417; see Akins, 524 U.S. at 21.  Here, CREW asserts that FECA creates a statutory entitlement to the value of the master contact list, and that it therefore has informational standing.  The character of the information sought weighs heavily on the informational standing analysis.  Common Cause,

108 F.3d at 417.  Hence, the key inquiry is whether FECA requires public disclosure of the

precise dollar value of the master contact list.  See Akins, 524 U.S. at 21 (citing Public Citizen v.

Dep't of Justice, 491 U.S. 440 (1989)).  If the information is "useful in voting," Common Cause,

108 F.3d at 418, then FECA requires its public disclosure,  see Akins, 524 U.S. at 20-21.  FECA

does not require that the information sought actually be used in a way that furthers the act's

purpose, Kean Mem. Op. at 15, but the information must at least be *capable* of being used in a

way that furthers FECA's purpose, see Akins, 524 U.S. at 21.

    This case is distinguishable from Kean for Congress Committee and Akins because there

are a multitude of "'reason[s] to doubt' the asserted justification" for the information sought.

Kean Mem. Op. at 14.  To begin with, the information cannot be useful *to CREW* in voting.  In

Akins, the Supreme Court added voters to a list of parties protected under FECA, which included

"political parties, candidates, or their committees."  Akins, 524 U.S. at 20; see also Kean Mem.

Op. at 20 (reaffirming that political candidate committees are protected by FECA).  The common

thread is that all of these parties are participants in the political election and campaign process.

CREW is not.  It is a § 501(c)(3) non-profit, tax-exempt organization that cannot vote and is

legally foreclosed from contributing to or participating in the political process.  Nor does it have

any members who participate in the political process.  CREW is really asserting a derivative

harm -- an alleged inability to help *others* (participants in the political process) realize that *they*

may have been deprived of information.  But to withstand the rigors of Article III, an injury in

fact must be suffered by the plaintiff or the plaintiff's members; one cannot piggyback on the

injuries of wholly unaffiliated parties.  In sum, CREW is simply the wrong party to seek redress

for the injury that has allegedly been suffered.[1]

Moreover, the Court is not convinced that the precise dollar value of the list is "useful in voting" *at all*, even to the participants in the political process.  Whether the list is worth one hundred dollars or one thousand, for example, is of no moment because the public already knows:  (1) that an illegal in-kind contribution took place; (2) that the in-kind contribution was a master contact list containing the names and contact information of conservative activists; (3) that the list's monetary value is negligible; and (4) the identities of the individuals and campaign involved in the illegal transaction.  This readily available information, rather than the precise value that CREW seeks, is what appears to be "useful in voting."

Even assuming for the moment that CREW is correct in claiming that it is entitled to have the FEC obtain a monetary value of the list from the administrative defendants, this has already been done.  The administrative defendants have stated that the list has a dollar value of zero.  CREW may not agree with this value, but that does not change the fact that CREW has already

---

[1]The briefs filed by the parties also discuss whether CREW has "prudential" standing to challenge the FEC's action.  The Court need not address this issue because Akins suggests that Congress intended to authorize standing to the full limits of Article III when it enacted FECA.  See 524 U.S. at 19-21 (using identical analyses for the "zone of interests" component of prudential standing and the "injury in fact" component of Article III standing, and stating that "[h]istory associates the word 'aggrieved' with a congressional intent to cast the standing net broadly--beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested.") (citations omitted); cf. Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C. Cir. 1990) (finding that the court need not address "prudential" standing because Congress intended to authorize standing to the full extent of Article III when it passed the Fair Housing Act).  Prudential standing requirements may only serve to narrow, not broaden, the class of parties that otherwise would have standing under Article III.  In any event, for the reasons discussed in this paragraph, it is doubtful that CREW would fall within the zone of interests that Congress intended to protect when it enacted FECA and, accordingly, CREW would not be able to satisfy the requirements of prudential standing.

received that to which it is entitled under the administrative process.[2]  The Court will not require

the FEC to go through the motions of a process that has already been completed when doing so

would yield no new or useful information.  See Wertheimer v. FEC, 268 F.3d 1070, 1074 (D.C.

Cir. 2001) (stating that informational injury will not be found if plaintiff cannot show that the

legal ruling sought "might lead to additional factual information"); see also Alliance for

Democracy v. FEC, 335 F. Supp. 2d 39, 48 (D.D.C. 2004) (stating that "since the process has

progressed as specified in the statute, it seems that [the] plaintiff[] ha[s] received everything [it]

is entitled to under the FECA").

    Tellingly, CREW's counsel conceded at the summary judgment hearing that CREW

would still have filed this lawsuit even if the FEC had provided a ballpark dollar figure for the

list's value.  This is consistent with CREW's approach at the administrative level, as CREW's

administrative complaint never requested the release of the information for which it now claims

an urgent need.  See Pl.'s Exh. B.  The facts of this case are, at bottom, as follows:  (1) the FEC,

in its prosecutorial discretion, determined that the value of the list was too low to justify the

expenditure of resources associated with further investigation; (2) based on this determination,

the FEC dismissed CREW's complaint; (3) CREW is unhappy with that decision; and (4) CREW

disagrees with the FEC's determination that the list has "limited" value.  But this mere difference

of opinion is insufficient, without more, to confer standing under Article III.

    It is axiomatic that standing cannot rest on a plaintiff's alleged interest in having the law

---

[2]The Court is convinced that CREW has received all or more than it is due under FECA.  In
addition to the administrative defendants' valuation of the list, CREW also knows the FEC's
assessment of the list's value.  FECA does not require the FEC to value an in-kind contribution in
the form of a contact list.  Alliance for Democracy v. FEC, Civil Action No. 04-00127 (D.D.C.
Mar. 4, 2005).

enforced, Common Cause, 108 F.3d at 418, because such an injury is too generalized and

ideological, see Lujan, 504 U.S. at 573; see also Judicial Watch, Inc. v. FEC, 293 F. Supp. 2d 41,

47 (D.D.C. 2003).  CREW seeks a reversal of the FEC's decision to dismiss the administrative

complaint, and a remand to the FEC so that it may reconsider (and, CREW hopes, reverse) its

decision not to pursue further investigation.  See Compl. at 8 (identifying Count One of the

Complaint as a wrongful dismissal claim).  CREW did not seek to know the precise dollar value

of the list.  Rather, it wants the FEC to hold the administrative defendants accountable for the

illegal receipt and nondisclosure of the master contact list.[3]  Hence, CREW stands in the shoes of

the Common Cause plaintiff -- it desires to do no more than "get the bad guys."  See Common

Cause, 108 F.3d at 418.  Such an endeavor is tantamount to seeking enforcement of the law.

Although "'Congress can create a legal right . . . the interference with which will create an Article

III injury,' Congress cannot, consistent with Article III, create standing by conferring 'upon *all*

persons . . . an abstract, self-contained, noninstrumental 'right' to have the Executive observe the

procedures required by law.'"  See Common Cause, 108 F.3d at 419 (internal citations omitted);

see also Lujan, 504 U.S. at 573.

Finally, under Common Cause, CREW was required to identify exactly how its alleged

lack of access to the precise value of the contact list has impeded its programmatic activities.

CREW has not done so.  It has never specified any programmatic concerns that have been

concretely and directly impacted adversely by the FEC's actions.  No particular plan is ever

---

[3]The statements made by CREW's counsel at the summary judgment hearing support the Court's
conclusion.  Specifically,  CREW's counsel stated that CREW is "seeking compliance with the
law," and framed the issue before the Court as whether CREW has standing to challenge the
FEC's failure to require Bush-Cheney '04 *to comply fully* with the reporting and disclosure
requirements of FECA.

identified for the use of the information -- for example, CREW never articulates a report that it intends to produce or a press conference that it wishes to hold.  The Court realizes that it may be difficult to detail how information will be used when a plaintiff does not yet possess that information, but such hardship is not implicated here:  CREW is already privy to the information that it seeks, plus a great deal more.  Yet no demonstrable injury is alleged with respect to any programmatic activity.  Essentially, CREW has only articulated a "setback to [its] . . . abstract social interests [involving public education and outreach]."  Common Cause, 108 F.3d at 417.  CREW's allegation that its resources have been drained because it has pursued the value of the contact list by filing this action is also legally infirm -- bootstrapped harms do not suffice to establish standing.  See id. at 419; Nat'l Taxpayers Union, 68 F.3d at 1434 (stating that "[a]n organization cannot . . . manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit") (quoting Spann, 899 F.2d at 27).  In order to satisfy the informational standing doctrine, an organizational plaintiff must show a more targeted, concrete injury than that suffered by CREW.  See Common Cause, 108 F.3d at 419.

## CONCLUSION

CREW has failed to carry its burden of establishing that it has standing to pursue this action under Article III.  Accordingly, the Court will grant FEC's motion for summary judgment and dismiss this action.  A separate order will be issued on this date.

   /s/  John D. Bates   

JOHN D. BATES
United States District Judge

Dated:   November 14, 2005

Copies to:

Anne L. Weismann
CITIZENS FOR RESPONSIBILITY AND ETHICS
IN WASHINGTON
11 Dupont Circle, NW
Second Floor
Washington, DC 20036
(202) 588-5565
Fax: (301) 913-9150
Email: aweismann@citizensforethics.org

Melanie Togman Sloan
CITIZEN FOR RESPONSIBLITY & ETHICS
11 Dupont Circle, NW
2nd Floor
Washington, DC 20036
(202) 588-5565
Fax: 202-588-5020
Email: msloan@citizensforethics.org
    *Counsel for plaintiff*


David Brett Kolker
FEDERAL ELECTION COMMISSION
Litigation Division
999 E Street, NW
Washington, DC 20463-0002
(202) 694-1650
Fax: (202) 219-0260
Email: dkolker@fec.gov

Kai Richter
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, DC 20463
(202) 694-1650
Email: krichter@fec.gov
    *Counsel for defendant*